J. C. FARLEY, Appellee, v. F. E. NEFF, Appellant (and one other case).

**JUDGMENT: Conclusiveness—Life Tenant Not Party Defendant—**
**1 Effect.** The plea of a remainderman in fee that he is not bound by a judgment fixing the boundaries of the land, because the life tenant was not made a party defendant, will avail nothing, unless he shows at least that the life tenant is still living.

**JUDGMENT: Conclusiveness—Adjudication of Boundary Lines—**
**2 Highways—County as Party.** The conclusiveness of a judgment fixing the boundary lines of lands separated by a public highway is not obviated by the failure to make the county a party defendant, when it appeared that the county did appear in the present action, pleaded to the merits, and was concluded thereby.

**QUIETING TITLE: Relief—Scope and Extent—Burdens and Bene-**
**3 fits.** A judgment, in an action to quiet title, that defendant should have the right to remove a hedge (valuable for the timber therein) from the land decreed to belong to plaintiff, but that defendant should *completely remove the same,* including brush and stumps, is not inequitable as to the latter requirement.

*Appeal from Clarke District Court.*—H. K. EVANS, Judge.

WEDNESDAY, DECEMBER 13, 1916.

ACTION to quiet title to a strip of land. The real controversy is over the location of the partition line between adjoining landowners. There was a decree for the plaintiff in each case, and the defendant has appealed.—*Affirmed.*

*Temple & Temple* and *V. R. McGinnis,* for appellant.

*O. M. Slaymaker,* for appellees.

EVANS, C. J.—The controversy between the parties involves the boundary lines of lands in a certain Section 7. The contention for the plaintiffs is that their controversy was fully adjudicated in a prior adjudication. The defendant contends that he is not bound by the prior adjudication,

and that the boundary line contended for by him has been established by acquiescence for 40 or 50 years. These suits were begun in 1913. Prior to that time, the controversy between the parties had run a course of several years, beginning in 1906. In 1907 a suit was brought by Matilda Sampson, one of the landowners, against all the landowners in the section, including the parties hereto or their grantors; and such suit went to final judgment. There is some confusion of names in the record pertaining to the prior history. Two brothers Neff were parties to the former proceeding. Their names appear in this printed record as F. E. Neff, F. H. Neff, H. E. Neff and H. P. Neff. Four names to two persons are the equivalent of no name, and we have to perform the function of a proof reader, in order to get an intelligent comprehension of the record. Upon the record as a whole, we venture to guess that the correct names of the two brothers are F. E. Neff and H. E. Neff, and that the name F. H. Neff is mistakenly intended for F. E. Neff, and that of H. P. Neff is mistakenly intended for H. E. Neff. The following plat, appearing in the present record, will aid in an understanding of the discussion:

SECTION 7.

The name F. H. Neff, appearing on such plat, should be corrected to F. E. Neff. The SE¼ of the NE¼ of such Sec. 7 was acquired by him from H. E. Neff since the prior litigation. The land appearing on the plat as belonging to Backus is that now owned by J. C. Farley. On April 7, 1906, all the parties owning land in such Sec. 7 entered into the following written contract:

"Whereas there are some disputes as to the center line running north and south and each quarter line and north and south boundary line running east and west of Section 7, in Township 72 North Range 25 West of the 5th P. M. in Clarke County, Iowa. Now therefore we the undersigned being owners of land in said Section 7, do hereby agree to and with each other that we will employ a competent and disinterested surveyor (the surveyor to be selected and chosen by a majority of the parties to this agreement at a meeting for that purpose) to establish the said line and each party to pay their proportion according to the number of acres they own that is affected by said survey, and said parties do hereby further agree that they will abide by said survey and that it will be permanent and binding on all parties to this contract and that all partition fences affected thereby are to be placed on the established line as shown by said survey on or before November 1, 1906. Said parties to this contract to pay to the treasurer (to be selected at the same meeting called to select the surveyors) their proportionate part of said expenses as soon as said survey has been made. Who is to pay out said money only on the order of the secretary and countersigned by the president who are also to be selected at said meeting."

Pursuant to such contract, the parties chose a surveyor, who made a survey and purported to establish the lines, and made his report accordingly. Some of the parties acquiesced and moved their fences; others refused. Thereupon, in April, 1907, Matilda Sampson brought an action in equity against

all said parties, to establish the boundary lines in accordance with the report of such surveyor, the same being known in this record as the Rarick survey. In a second count of her petition, she asked that, in the event that such Rarick survey could not be found binding upon the parties to the proceeding, the court proceed to establish the boundaries and corners of the lands in such section in accordance with the provisions of the statute in such cases. J. H. Farley and the two Neffs were parties defendant in such proceedings, and answered therein substantially to the same effect. Each of them pleaded the fact of long acquiescence in boundary lines as a settlement thereof. On December 12, 1908, the district court entered an order in such case, appointing Delay as a ''commissioner to make survey and establish the corners, as provided in Chapter 25, Title 21, of the Code.'' The record also shows that this was done ''by agreement.'' Delay, as commissioner, made his report. Such report was duly objected to by J. H. Farley and by the Neffs. Such objections were overruled, and the report was duly confirmed by the court, and judgment entered accordingly, in 1909. From such judgment, no appeal was ever taken. The lines thus established had the effect of both giving and taking land, as to some of the parties to the litigation. J. H. Farley acquiesced in the adjudication by giving up land theretofore claimed by him, and he demanded from the defendant Neff possession of land awarded to him by the same adjudication. He brought this suit, therefore, in equity, to quiet his title to the strip involved, and decree was awarded him.

Referring for the moment to the J. H. Farley case alone, we think it clear that the adjudication referred to was conclusive upon the parties as to the controversy over the true location of the boundary lines. The only

1. JUDGMENT: conclusiveness: life tenant not party defendant: effect.

defect suggested in the proceedings is that one Elizabeth Neff was not a party, and that she was the owner of a life estate in the SE¼ of the NE¼, her son H. E. Neff being the owner of the

remainder. This is the 40-acre tract subsequently acquired
by F. E. Neff. Whether Mrs. Neff is still living or whether
her life estate has been terminated by death, does not appear
in the record. If her life estate has terminated, then F. E.
Neff holds his title wholly under grant from his brother,
H. E. Neff, and the irregularity as to Elizabeth Neff becomes
entirely immaterial. We think the showing of interest in
Elizabeth Neff is not sufficient to warrant a consideration of
the alleged irregularity in the proceeding.

Referring now to the suit of plaintiff J. C. Farley, it is
made to appear that his land and that of the defendant are
separated by a highway, and that the adjustment of the line
2. JUDGMENT: between them will involve a shifting of the
conclusiveness: highway. The contention of the defendant
adjudication of
boundary lines: is that ·the county is a party in interest, and
highways: coun-
ty as party. and that it is not a party to this case, and
was not a party to the prior adjudication; and that, for such
reason alone, such plaintiff is not entitled to any relief. It
is sufficient answer to this contention that it is made to
appear by an amended abstract that the county did appear
by counsel in the present case and did file a pleading herein,
the purport of which was that the county was satisfied to
take its highway upon the proper lines as the court should
find the same to be, subject to certain conditions, which
were fully provided for by the pleading of the plaintiff. We
think this sufficiently meets the objection made by the appel-
lant at this point.

One further complaint should be noted. A hedge row
had been planted by the defendant Neff at or near the old
line between him and J. H. Farley. It was ordered by the
3. QUIETING TITLE: decree below that he cut down such hedge,
relief: scope and
extent: burdens and that he fully remove the same from Far-
and benefits: ley's land. The appellant complains of the
mandatory part of this decree. He claims the right to sur-
render the land in its actual condition, if he must surrender
it at all. The plaintiff, appellee, concedes his right in this

respect, and offers to take the land in its present condition, hedge and all. This would seem to cure the grievance at this point. It appears that the old hedge contains considerable valuable timber, suitable for cutting into posts. The defendant having planted the hedge, the trial court was desirous of awarding to him its benefit, and awarded same to him upon the condition that it should be fully cleared; in other words, it required him to take burden with benefit, and, in effect, forbade him to remove the substantial part of the timber and yet leave the ground encumbered with brush and stumps, etc. There is nothing inherently inequitable in the order as made. Furthermore, the plaintiff offers to take the hedge in its entirety, relieving the defendant of all obligation with reference thereto. We see no ground of complaint for the appellant.

The decree of the court is therefore affirmed in each case. —*Affirmed.*

LADD, GAYNOR and SALINGER, JJ., concur.